Robert Lee **WILLIE**,
Petitioner-Appellant,

v.

Ross **MAGGIO, Jr.**, Warden, Louisiana State Penitentiary,
Respondent-Appellee.

No. 84–3219.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1984.

Rehearing and Rehearing En Banc
Denied Sept. 7, 1984.

Ronald J. Tabak, New York City, for petitioner-appellant.

William R. Alford, Jr., 1st Asst. Dist. Atty., Covington, La., J. Kevin McNary, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

RANDALL, Circuit Judge:

Robert Lee Willie was convicted in a Louisiana court of the murder of Faith Hathaway and sentenced to die. After exhausting his state remedies, Willie filed an application for federal habeas relief. On March 29, 1984, the district court denied Willie's application for federal habeas relief and a certificate of probable cause to appeal. On March 30, 1984, we granted Willie's motion for a certificate of probable cause and stayed Willie's scheduled execution to allow him an opportunity to address the merits of his appeal. For the reasons set forth below, we affirm the district court's denial of the writ of habeas corpus.

I. FACTUAL AND PROCEDURAL BACKGROUND.

Willie was convicted in the Twenty-Second Judicial District Court of Washington Parish, Louisiana, of the murder of Faith Hathaway and received the death sentence.

The Louisiana Supreme Court conditionally affirmed Willie's conviction but vacated his sentence. The court remanded the case to the district court to determine whether a printed note found near the murder scene created a reasonable doubt about Willie's guilt. If no such doubt was created by the note, the district court was directed to hold a new penalty hearing. *State v. Willie*, 410 So.2d 1019 (La.1982).

The trial court conducted an evidentiary hearing and found that the note had no significance, and therefore did not create a reasonable doubt about Willie's guilt. A new penalty hearing was held, and Willie was again sentenced to death. On appeal, the Louisiana Supreme Court affirmed Willie's conviction and sentence. *State v. Willie*, 436 So.2d 553 (La.1983). The United States Supreme Court denied Willie's petition for a writ of certiorari. — U.S. —, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984).

Willie twice applied for habeas relief in state district court, and the court denied both of his petitions without issuing any opinion. Willie then sought habeas relief in the Louisiana Supreme Court, but his petition was also denied without opinion.

Willie then filed a petition for federal habeas relief and an application for a stay of execution in the court below. The district court held an evidentiary hearing on Willie's claims. In an oral ruling from the bench, the court denied Willie's petition and refused to grant a certificate of probable cause to appeal.

The gruesome details of the murder that resulted in Willie's conviction can be briefly summarized here as follows: At approximately 4:30 a.m. on the morning of May 28, 1980, Willie and Joseph Vaccaro offered a ride to the victim, Faith Hathaway, outside of the Lakefront Theatre, a discotheque in Mandeville, Louisiana. Hathaway, an eighteen-year old woman, had been celebrating her last night as a civilian before entering the United States Army. Instead of taking the victim home, as she had asked, Willie

and Vaccaro took Hathaway to Fricke's Cave, a heavily wooded, secluded gorge south of Franklinton, Louisiana. Willie or Vaccaro, or both, raped Hathaway, and then one of the men repeatedly stabbed the victim in the throat while the other held her hands. On June 1, 1980, Hathaway's clothes and purse were found approximately one hundred and fifty yards from her body. The victim's body was discovered on June 4, 1980. *State v. Willie*, 410 So.2d at 1023.

On June 3, 1980, Willie and Vaccaro were arrested in Hope, Arkansas for unrelated crimes. On June 10, 1980, both men, still in custody in Arkansas, confessed to Louisiana police officers that they had abducted Hathaway, but each accused the other of raping her and slashing her throat. *Id.*[1]

## II. ISSUES ON APPEAL.

Willie presents nine issues for review in this appeal. The first four relate to the guilt phase of his trial. He contends that his constitutional rights were violated because: (1) four of the jurors who convicted Willie participated in the voir dire held during the trial of his codefendant, Vaccaro; (2) he was required to exercise two of his peremptory challenges against jurors who should have been excused for cause; (3) his confession should have been suppressed because it was obtained in violation of the Supreme Court's decision in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); and (4) the trial court's exclusion of jurors who were unambiguously opposed to imposing the death penalty resulted in a biased and unfair jury.

Willie's five remaining contentions center around his resentencing proceeding. Willie argues that he is entitled to habeas relief because: (1) the trial court failed to change the venue of trial; (2) the trial court improperly excused a juror who did not unambiguously state that he was incapable of voting to impose the death penalty; (3) the

---

**1.** Vaccaro was also convicted of first-degree murder, but was sentenced to life imprison- ment.

prosecutor's closing argument was so prejudicial that Willie was denied a fundamentally fair trial; (4) Willie received ineffective assistance of counsel at his second penalty hearing; and (5) Willie was not given the opportunity to prove to the court below that Louisiana imposes the death penalty in an invidiously discriminatory manner.

In spite of the fact that several of the claims raised by Willie are difficult, the district court denied most of Willie's claims without setting forth any findings of fact or conclusions of law upon which it based its decision, holding only that none of Willie's constitutional rights had been violated.[2] We have thus been deprived of the benefit of the district court's reasoning in denying Willie's claims. We recognize that the district court was operating under severe time constraints because of the imminence of Willie's execution, and we also recognize the importance of the district court's functioning within those constraints if it is possible responsibly to do so. More important, however, particularly in a capital case, is the requirement that the district court set forth, albeit briefly and perhaps orally, those specific findings of fact and conclusions of law that underlie its ultimate conclusion to grant or deny relief. Those findings and conclusions, while they may initially be the source of some delay, ultimately serve the state's interest (as well as the petitioner's) by facilitating prompt and effective appellate review.

We consider each of Willie's contentions in turn.

## III. GUILT PHASE OF THE TRIAL.

### A. Jurors at the Vaccaro Voir Dire.

Willie initially contends that he was denied a constitutionally fair trial because four of the jurors in his trial heard prejudicial remarks about Willie during the voir dire conducted at the trial of his co-defendant, Vaccaro. The trials of Willie and Vaccaro were severed and held simultaneously in the same courthouse, with Vaccaro being tried upstairs and Willie being tried downstairs. As more veniremen were needed for the voir dire at Willie's trial, potential jurors that were present at Vaccaro's voir dire were sent to the downstairs courtroom, along with veniremen who had been peremptorily challenged.[3]

Four of the jurors who were present during part of the voir dire in Vaccaro's trial served on the jury that convicted Willie. While present at the Vaccaro voir dire, they heard the prosecutor explain Louisiana law on principals, La.Rev.Stat.Ann. § 14:24 (West 1974), which provides that all persons concerned in the commission of a crime, whether or not they directly committed the act constituting the offense, are held liable as principals.[4] Vaccaro Trial

---

**2.** In his petition for a writ of certiorari to the United States Supreme Court, Willie raised three of the issues that are raised in the instant appeal. In denying Willie's writ of habeas corpus, the district court remarked that the Supreme Court's failure to grant a writ of certiorari "indicated its acquiescence in the, or its approval of the offsetting contentions made in behalf of the State of Louisiana, the respondent, in the Writ application." Record on Appeal Vol. 3 at 111. The Supreme Court has never held that the denial of a writ of certiorari carries an implication regarding the Court's views on the merits. See, e.g., Brown v. Allen, 344 U.S. 443, 456, 73 S.Ct. 397, 406, 97 L.Ed. 469 (1953); H. Hart & H. Wechsler, The Federal Courts and The Federal System, 1613–16 (2d ed. 1973).

**3.** Willie's petition for habeas corpus relief alleges:

Petitioner's rights under the laws and Constitution of Louisiana and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated by the fact that at least four of the jurors who voted to convict him had heard Vaccaro's attorney make the highly prejudicial statements about Petitioner in the upstairs courtroom.

We note that throughout this petition, Willie asserts that each alleged constitutional error, because he has been sentenced to die, violates his eighth amendment right to be free from cruel and unusual punishment.

**4.** La.Rev.Stat.Ann. § 14:24 provides that:

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

Transcript Vol. 5 at 43. However, the prosecutor later clarified to the jury that "if all the state does is prove that Joe Vaccaro was there and we don't prove that he knew what was going on or was in any way involved in it, I tell you that is not enough for you to convict him." *Id.* at 173.

Shortly thereafter, Vaccaro's counsel posed the following to the jury:

> Let me give you another example, let's say Mr. Vaccaro was there and let's say he is drunk or on pills or whatever, and not himself, and let's say that Robert Willie says hold her hands and Joe doesn't know what's going on, he holds her hand and Mr. Willie comes up to her and kills her. Mr. Vaccaro didn't know he was going to kill her. My question to you is, in that situation, would you automatically vote first degree murder on a case like that?

*Id.* at 176. After asking the veniremen a few more questions, Vaccaro's attorney explained:

> The burden of proof is on the State therefore to prove the guilt of Joseph Vaccaro beyond any reasonable doubt. Not only must they show that Joseph Vaccaro was there and Joseph Vaccaro might have killed her or taken part in it, not only must they prove that he probably took part in it or killed her, they must prove beyond any reasonable doubt that he did do it. Now again, it is not enough for the State to prove that a crime was committed. It is not enough to prove that Robert Willie killed Faith Hathaway, but the State must prove that Joseph Vaccaro was a principal and that he intended it and that he participated in it.

*Id.* at 185.

The foregoing excerpts from the Vaccaro voir dire are examples only of questions and statements, both by the prosecutor and by defense counsel, that appear throughout that voir dire. A reading of that voir dire indicates to us that any venireman who sat through very much of it, as the four jurors at issue here did, would have come away with the understanding that Vaccaro's defense would be that it was Willie, not Vaccaro, who stabbed Faith Hathaway, while Vaccaro sat by, totally surprised by the events that unfolded, perhaps intoxicated or drugged or both.

During the guilt phase of Willie's trial, Willie did not take the stand, but the tape recorded statement he gave to Louisiana officials in Arkansas was played to the jury. In his statement, Willie admitted that he and Vaccaro had abducted Hathaway. However, Willie not only claimed that Vaccaro stabbed the victim, but also asserted that Willie was under the influence of drugs and alcohol, and that he did not know that Vaccaro was going to kill Hathaway. During closing argument, Willie's counsel reiterated that it was Vaccaro who killed Hathaway, and that Willie was so heavily influenced by the effects of alcohol that he was incapable of possessing the specific intent to murder Hathaway and thus, that Willie could not be held liable for her murder.

At the voir dire in Willie's trial, the trial judge individually asked each of the four jurors who had been present at the Vaccaro voir dire whether he or she had read or heard about the case and whether he or she had formed any opinion or notion as to Willie's guilt. None of the four jurors stated that he or she had formed any opinion as to Willie's guilt, and each juror affirmed that he or she would decide the case solely on the evidence presented. I Willie Trial Transcript Vol. 6 at 276–82.[5]

Despite the fact that none of these jurors evinced any indication of actual bias against Willie, Willie now claims that because four of the jurors that convicted him had heard Vaccaro's lawyer assert that Willie stabbed Hathaway, these jurors should be presumed to have been preju-

---

5. The state court record from the guilt phase and first penalty phase of Willie's trial is re-

ferred to as "I Willie Trial Transcript," whereas

diced against him.[6] If Willie can sustain this contention, he would be entitled to habeas relief because his sixth amendment right to a trial by an impartial jury was violated.

A juror is presumed to be biased when he or she is apprised of such inherently prejudicial facts about the defendant that the court deems it highly unlikely that the juror can exercise independent judgment, even if the juror declares to the court that he or she will decide the case solely on the evidence presented. *See, e.g., United States v. Brown*, 699 F.2d 704, 708 (5th Cir.1983); *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir.1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969). For instance, in *Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964) (per curiam), the defendant was convicted in separate trials of forging government checks and of transporting forged instruments in interstate commerce. The two cases were tried in succession. The jury in the first case announced its guilty verdict in open court in the presence of the jury panel from which the jurors who were to try the second case were selected. When five jurors from this panel were selected to serve on the jury in the defendant's second trial, the defendant objected but was overruled. The Supreme Court reversed, holding that prospective jurors who have heard a verdict returned against an individual prior to that person's trial on a similar charge should be automatically disqualified. Similarly, in *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), the Court presumed that the jury was prejudiced where a twenty-minute film of the defendant's confession was broadcast three times by a television station in the community where the crime and the trial took place. Thus, when jurors have participated in a defendant's prior conviction, or his guilt, either past or present, appears to have been conclusively established in their presence, prejudice may be inevitable.

We note, however, that the Supreme Court has long held that in order to have an impartial jury, "[i]t is not required ... that the jurors be totally ignorant of the facts and issues involved" in a case. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). In *Irvin* the Court noted that important cases can be expected to arouse the interest of the community, and hardly any prospective juror will not have some impression or opinion about the merits of the case. 366 U.S. at 722, 81 S.Ct. at 1642. Thus, the Court held that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is insufficient to rebut the presumption that a prospective juror is impartial if the juror can lay aside his or her impression and render a verdict based on the evidence presented in court. *Id.* at 723, 81 S.Ct. at 1642.

The Court will not readily presume that a juror is biased solely on the basis that he or she has been exposed to prejudicial information about the defendant outside the courtroom. *See Smith v. Phillips*, 455 U.S. 209, 210–11 n. 1, 102 S.Ct. 940, 948 n. 1, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring). For instance, in *Marshall v.*

---

the record from his second penalty hearing is referred to as "II Willie Trial Transcript."

**6.** As noted in footnote 3, *supra*, Willie contends that he was deprived of his constitutionally-mandated right to a trial before an impartial jury, and the right to confront witnesses against him. Courts have examined communications with jurors that occur outside the courtroom under both a confrontation clause and due process analysis. *See, e.g., Durr v. Cook*, 589 F.2d 891, 893 (5th Cir.1979). This is, in part, a result of the Supreme Court's frequent pronouncement that "the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Parker v. Gladden*, 385 U.S. 363, 364, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966) (quoting *Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 550, 13 L.Ed.2d 424 (1965)). But whether a confrontation clause or due process analysis is used to examine the effect of outside influence on the jury, the standard required for relief is the same: that the defendant was unfairly prejudiced by such outside influence. *Durr v. Cook, supra*, at 894.

*United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), the defendant was convicted of dispensing certain drugs without a prescription. During the trial, seven of the jurors were exposed to various news accounts disclosing that Marshall had previously been convicted of forgery, that he and his wife had been arrested for. other narcotics offenses, and that he had practiced medicine without a license. Noting that the jurors had been exposed to this information, the Court reversed Marshall's conviction, despite the jurors' assurances that they could be impartial.

In *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the Court noted, however, that Marshall's conviction was reversed in the Court's exercise of its " 'supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts,' and not as a matter of constitutional compulsion." *Id.* at 797, 95 S.Ct. at 2035 (quoting *Marshall v. United States*, 360 U.S. at 313, 79 S.Ct. at 1173). The *Murphy* Court made it clear that, in the context of federal habeas proceedings, the fact that a juror was "exposed to a defendant's prior conviction or to news accounts of the crime with which he is charged" does not "presumptively deprive[ ] the defendant of due process." *Id.* at 799, 95 S.Ct. at 2036.

In the instant case, we do not believe that what the four jurors heard during the Vaccaro voir dire was prejudicial enough to infer that these jurors were biased. We do think it is fair to conclude that they came away from the Vaccaro voir dire having heard a theory of Vaccaro's defense to the murder of Faith Hathaway, advanced by Vaccaro's lawyer primarily in the form of hypothetical questions, that ultimately turned out at Willie's trial to be antagonistic to the defense advanced by Willie. During the Vaccaro voir dire, however, neither the prosecutor nor counsel for the defense disclosed any facts or evidence.[7] Contrary to Willie's contention, those Willie jurors who were present during part of Vaccaro's voir dire did not learn that Vaccaro had confessed to Hathaway's abduction, but blamed Willie for the stabbing.[8]

In *United States v. Brown*, 699 F.2d 704 (5th Cir.1983), the defendant Brown, a county commissioner, claimed that he was convicted by a jury that had been prejudiced by repeated exposure to the voir dires held in the cases of other commissioners similarly charged, on similar evidence. Brown also argued that he was unfairly prejudiced when the trial judge told the jury that two of the other county commissioners had pleaded guilty to the charges against them.

During the voir dires in the other county commissioners' trials that Brown's jurors witnessed, the prosecutor described the fraudulent schemes that the commissioners were charged with, which were similar to the scheme later proved against Brown at his trial. The veniremen, who were common both to Brown and to the other commissioners, were also apprised of the government witnesses who would testify against the other commissioners, and those same witnesses later testified against Brown at his trial.

---

7. This case can be contrasted with *Donovan v. Davis*, 558 F.2d 201 (4th Cir.1977), where the petitioner sought habeas relief because some of the jurors who convicted him of attempted rape had served as jurors in his earlier trial, in which he was charged with the unauthorized use of a motor vehicle. Although the petitioner was acquitted of the automobile charge, the jurors in that trial heard incriminating evidence that related to the attempted rape charge, and the Fourth Circuit held that the petitioner was entitled to habeas relief. None of the jurors in Willie's case heard any evidence from Vaccaro's trial, or served on the jury that convicted Vaccaro.

8. Willie argues that because the four jurors heard Vacarro's lawyer hypothesize that Willie stabbed Hathaway while Vaccaro stood by and watched, the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), was violated. In *Bruton*, the Court held that a co-defendant's confession implicating the defendant could not be admitted at the defendant's trial unless the co-defendant was available for cross-examination. Here, it was not conveyed to the four jurors that Vaccaro had made any statement implicating Willie.

In refusing to infer bias, we noted that the Brown jurors had heard no evidence against any of the other commissioners; nor did they have the opportunity during the voir dire to pass upon the credibility of government witnesses who later appeared in Brown's trial. We also noted that none of the Brown jurors had been apprised of the other commissioners' defenses; whereas here, the four Willie jurors present at the Vaccaro voir dire might have discerned that Vaccaro's strategy would be to accuse Willie. But we find this distinction alone insufficient to raise a presumption that Willie's jurors were prejudiced.[9]

■ In summary, the factors that the cases have identified as giving rise to a presumption of prejudice do not exist here. The four jurors in this case heard no evidence, saw no witnesses, and were told no facts (as distinguished from lawyers' hypotheses) at the Vaccaro voir dire. That these jurors heard a lawyer's theory of the events that directly contradicted the theory that Willie advanced at trial is not sufficient to cause us to presume prejudice and order habeas relief.[10]

### B. Willie's Exercise of Peremptory Challenges.

■ Willie also contends that he was denied the right to an impartial jury because he was required to use two of his peremptory challenges against jurors who allegedly should have been excused for cause.[11] At the voir dire in Willie's trial, Mrs. Erroll Jenkins stated that she had formed an opinion as to Willie's guilt, but claimed that she could put her opinion aside and be fair. I Willie Trial Transcript Vol. 6 at 249–50. After being peremptorily challenged by Willie's counsel, Jenkins was sent to the Vaccaro trial and questioned there the

---

**9.** We are aware that a number of courts have held that when two or more persons are charged with the same or related offenses arising from the same transaction and are tried separately, a juror who has convicted in one case is not competent to sit in another. *See, e.g., United States v. Haynes, supra; Casias v. United States,* 315 F.2d 614 (10th Cir.), *cert. denied,* 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963); *Everitt v. United States,* 281 F.2d 429 (5th Cir.1960). Here, of course, none of the four jurors who were present for part of the Vaccaro voir dire heard any evidence implicating either Willie or Vaccaro, heard any arguments made by either side in the case, or participated in or were present for Vaccaro's conviction.

**10.** Willie likens his case to *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); and *United States v. Williams,* 568 F.2d 464 (5th Cir.1978), all of which we find distinguishable. In *Turner,* two of the deputy sheriffs who were in charge of the jury were also the state's two principal witnesses against the accused. There, the Supreme Court reversed the defendant's conviction because of the "continuous and intimate association throughout a three-day trial" between the prosecution's key witnesses and the jury. In the instant case, none of the four Willie jurors met or heard, outside of the courtroom, including during the Vaccaro voir dire, any of the witnesses that testified at Willie's trial, and thus their credibility determinations rested solely on what they witnessed at trial.

Moreover, *Turner* involved private communication with a jury during trial, which, under *Remmer v. United States,* 350 U.S. 377, 379, 76 S.Ct. 425, 426, 100 L.Ed. 435 (1956), is deemed presumptively prejudicial.

We have already noted that *Marshall* is not applicable to habeas settings. In *United States v. Williams,* we applied *Marshall* in a direct criminal appeal, explicitly recognizing that the *Marshall* rule afforded the defendant more protection from prejudice than is constitutionally required. 568 F.2d at 469.

In his petition for habeas relief, Willie also asserts that during closing argument the prosecutor suggested that it was possible that Willie had given his confession because he believed that Vaccaro might have implicated Willie in the murder. Willie contends that, after hearing this, the four Willie jurors present at Vaccaro's voir dire would have even more reason to believe that Vaccaro had told Louisiana officials that Willie had stabbed Hathaway. While it was improper for the prosecutor to even suggest that Vaccaro might have implicated Willie in the murder, we do not believe that the prosecutor's comment coupled with what the four Willie jurors heard at Vaccarro's voir dire deprived Willie of a trial by an impartial jury.

**11.** Willie's petition alleges:

Two of Petitioner's twelve peremptory challenges were used against jurors who were actually biased against him. This violated Petitioner's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

same day. While Jenkins initially maintained that, despite the fact that she had formed an opinion as to Vaccaro's guilt, she could be a fair juror, she ultimately indicated that she could not put aside her opinion on that case. Thus, Vaccaro's attorney successfully challenged her for cause. Vaccaro Trial Transcript Vol. 6 at 319–20. A second venireman, Mrs. Bobby Sue Thomas, also stated during the voir dire at Willie's trial that she had formed an opinion as to Willie's guilt, but claimed that she could still be impartial. I Willie Trial Transcript Vol. 6 at 149–50, 189. She was also peremptorily challenged by Willie's attorney, *id.* at 203, and was sent upstairs to the Vaccaro trial. At Vaccaro's voir dire, Thomas claimed that she did not have any opinion as to Vaccaro's guilt or innocence. Vaccaro Trial Transcript Vol. 5 at 129–30.

Willie asserts that based upon the pretrial publicity about both defendants, veniremen could not have had an opinion about Willie's case without having one with regard to Vaccaro's case as well. Thus, Willie contends that because Jenkins admitted that she could not be impartial as to Vaccaro's guilt, she concealed the fact that she could not be unbiased in deciding Willie's guilt, and thus she should have been excused for cause.

Willie also conjectures that Thomas' inconsistent answers resulted from her displeasure over being peremptorily challenged by Willie's attorney. Willie speculates that after Thomas failed to get on the jury at Willie's trial, where she admitted having an opinion but supposedly hid her actual bias, Thomas allegedly believed that she would succeed in serving on the Vaccaro jury by denying having an opinion about that case. Willie would have us conclude that Thomas was actually biased against both defendants, and could not have rendered a fair decision at either trial. Thus, Willie argues that because these jurors concealed their bias and he used his peremptory challenges against them when he could have challenged them for cause, our decision in *United States v. Nell,* 526 F.2d 1223 (5th Cir.1976), requires us to set aside his conviction.

In *Nell,* we held that "as a general rule, it is error to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to peremptory challenges." 526 F.2d at 1223. We fail to see, however, how the trial court's conduct of the voir dire forced Willie to use unnecessarily one of his peremptory challenges. There is no allegation here that the trial court's voir dire of the two veniremen was inadequate, nor is there any suggestion that Willie's counsel was in any way restricted in his questioning of the two prospective jurors. *See, e.g., United States v. Butera,* 677 F.2d 1376, 1383–84 (11th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). Nor is there any allegation that either of the juror's responses to questions asked during the voir dire revealed any grounds for challenging them for cause.[12] Indeed, Willie's counsel himself did not seek to have either venireman excused for cause.

Because we conclude that our decision in *United States v. Nell* was in no way violated by the trial court here, we cannot afford Willie relief on this ground.[13]

### C. Edwards v. Arizona Violation.

Willie also argues that his confession was obtained in violation of the Supreme Court's decision in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards,* the Court held that

---

**12.** Moreover, we are unable to assume that, as Willie suggests, neither of the two jurors was capable of having different opinions regarding the two defendants, and thus that either Jenkins or Thomas was actually biased against Willie. It is possible that one or both of them had heard or read something about one of the defendants that caused her to believe that he had stabbed Hathaway, or perhaps one or both of them had

taken an instant dislike to one of the defendants upon seeing him in the courtroom.

**13.** Because we do not find that the trial court abused its discretion under *Nell,* we do not find it necessary to consider the extent to which *Nell* is applicable to federal habeas proceedings.

once a suspect has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 485, 101 S.Ct. at 1885. *See also Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *United States v. Cherry*, 733 F.2d 1124 (5th Cir. 1984).

On June 3, 1980, Willie and Vaccaro were arrested in Hope, Arkansas, on unrelated aggravated rape, aggravated kidnaping, and attempted murder charges. Following his arrest, Willie was given his *Miranda* warnings by Special FBI Agent Lambert and Lieutenant Duvall of the Arkansas State Police. Willie was not interrogated on that date because he refused to answer Lambert's questions without a lawyer being present. On June 4, Willie was taken to Texarkana, Arkansas, and again advised of his right to an attorney by a United States Magistrate, who read the charges against him and set bond. Willie waived his right to an attorney for the purposes of that hearing and informed the magistrate that he had an attorney in Louisiana but did not request his presence.

On June 9, Willie told one of his jailors that he wanted to talk to Agent Lambert, who had sought to speak to Willie about the crimes for which he was arrested in Arkansas. Willie's request was passed on to another jailor who, on June 11, apprised Agent Lambert that Willie wanted to talk to him. Lambert went to see Willie, advised him again of his *Miranda* rights, and took a statement from him.

Meanwhile, on June 10, Investigator Varnado of the Washington Parish District Attorney's Office and Sergeant Sharp of the St. Tammany Parish Sheriff's Office interviewed Willie at the jail in Texarkana, Arkansas, regarding the Hathaway rape and murder. Before Investigator Varnado and Sergeant Sharp interviewed Willie, they were informed that Willie had refused to speak to Agent Lambert without the services of an attorney about the federal crimes for which he had been arrested. Willie was fully advised of his constitutional rights and expressly stated that he did not want the advice of an attorney. Willie then gave the officers an oral statement and a tape recorded statement that he signed after it was transcribed.

Willie contends that because Varnado and Sharp knew that Willie had invoked his right to an attorney when arrested by Agent Lambert on June 3, Varnado and Sharp were barred under *Edwards* from interrogating him about the Hathaway rape and murder absent knowledge that Willie had already reinitiated conversation with Lambert. We note that Willie does not contest the Louisiana courts' finding of fact that Willie reinitiated conversation with Agent Lambert on June 9.[14] Willie's argument is, however, premised on the assumption that once a suspect invokes the right to an attorney with regard to questioning about the crime for which he or she is arrested, *Edwards* bars all other law enforcement officials, including those from other jurisdictions or agencies, from interrogating the suspect about any related or unrelated crimes.[15] Even if we were to

14. The trial court did not specify the ground upon which it denied Willie's motion to suppress the confession. However, the Louisiana Supreme Court found that Willie had reinitiated conversation with Agent Lambert on June 9, *State v. Willie*, 410 So.2d at 1029, and the court's factual finding carries a presumption of correctness under 28 U.S.C. § 2254(d) (1982). *See Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The Louisiana Supreme Court also set forth several reasons why *Edwards* was not applica-

ble to this situation, 410 So.2d at 1028–29, none of which we need to address.

15. Willie's petition alleges:
 The State's principal evidence against Petitioner at his trial and his second sentencing proceeding was a statement the Petitioner made on June 10, 1980, while in custody, to Investigator Varnado of the Washington Parish District Attorney's office and Sergeant Donald Sharp of the St. Tammany Parish Sheriff's office. At the time they initiated this interrogation, Investigator Varnado knew that

assume that *Edwards* extends this far, we do not believe that it was violated in this case; however, we intimate no view as to whether Willie's assumption is correct.[16]

■ On June 3, 1980, Willie was arrested in Arkansas for committing federal crimes. Once arrested, Willie refused to speak to the arresting officers about these crimes unless a lawyer was present. His request was scrupulously obeyed by the FBI and Arkansas law enforcement officials. On June 9, Willie said that he wanted to talk to FBI Agent Lambert and later gave him a statement. Having initially declined to speak to the FBI about the crimes for which he was arrested, Willie then reinitiated communication with Agent Lambert and agreed to talk to him without counsel. Thus, *Edwards v. Arizona* was obeyed from the time that Willie invoked his *Miranda* rights on June 3, until he elected to make contact with the FBI on June 9. Even if we assume that the Louisiana offi-

cials were subject to the *Edwards* rule in this case, once Willie reinitiated communication with Lambert on June 9, the Louisiana officials were not barred from questioning Willie about the Hathaway rape and murder unless he again refused to respond to such questions without a lawyer. Instead, the record discloses that he affirmatively waived counsel and responded to the questions by giving a statement containing exculpatory aspects. That the Louisiana officials were unaware that Willie had decided to reinitiate conversation with Agent Lambert before they interviewed him is not dispositive. The critical inquiry is whether Willie was further interrogated before he reinitiated conversation with law enforcement officials. He was not, and thus *Edwards* was not violated.[17]

### D. Composition of Willie's Jury.

■ Willie next argues that "the process of excluding from guilt-phase juries per-

---

during the prior week, while in custody, Petitioner had refused to make a statement to other law enforcement officials because no lawyer was present on his behalf and Sergeant Sharp knew that Petitioner wanted to talk with an attorney. Petitioner did not in any way initiate his discussion with Investigator Varnado and Sergeant Sharp. (Neither of them has ever claimed to have been aware that on June 9, 1980 Petitioner had expressed an interest in speaking with an FBI agent. Even the FBI agent in question did not learn until June *11*, 1980, that Petitioner wished to speak with him.)

[I]t is apparent that the *per se* rule of *Edwards v. Arizona,* bars the use of Petitioner's statement even though the law enforcement official to whom Petitioner expressed his unwillingness to speak without the presence of an attorney and the law enforcement officials who obtained Petitioner's statement were different people, were investigating a different crime and were from a different jurisdiction.

**16.** We note that Willie was tried in October, 1980, and that his case was still pending on direct appeal at the time that *Edwards* was decided. Because we do not find that *Edwards* was violated in this instance, it is unnecessary for us to decide whether *Edwards* has retroactive application to cases that were on direct appeal when *Edwards* was decided. In *Solem v. Stumes,* —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), the Supreme Court held that *Edwards* was not to be applied in collateral review

of convictions that were final before *Edwards* was decided. As we just noted, however, this case was not final at the time that *Edwards* was decided. On April 30, 1984, the Supreme Court granted certiorari in *Shea v. Louisiana,* —— U.S. ——, 104 S.Ct. 2167, 80 L.Ed.2d 551 (1984), to decide the question whether *Edwards* applies to cases that were pending on direct appeal when *Edwards* was decided. In *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), a case that was pending before the Oregon Court of Appeals at the time that *Edwards* was decided, the Supreme Court reversed the Oregon court's decision that *Edwards* was violated, without considering whether *Edwards* was retroactive. In *Solem v. Stumes, supra,* the Court explicitly noted that "*Oregon v. Bradshaw* should not be read as holding that *Edwards* applies on direct review to interrogations before *Edwards* was decided," since the Court had not addressed the question of retroactivity. 104 S.Ct. at 1345 n. 9.

**17.** We are aware that even if a defendant reinitiates conversation with the police after initially expressing the desire to deal with them only through counsel, the prosecution must show that his or her waiver of counsel was a knowing and voluntary one. *See Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983). However, Willie has not suggested that his waiver of an attorney before speaking to either Louisiana officials or Agent Lambert was not knowing or voluntary; hence, we need not address that issue.

sons who are unwilling to vote for capital punishment results in guilt-phase juries that are (a) biased in favor of the prosecution on the issue of guilt or innocence and (b) not a fair cross section of the community." Brief for Petitioner-Appellant at 62.[18] We rejected this very contention in *Sonnier v. Maggio,* 720 F.2d 401, 407–08 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984); *see also Smith v. Balkcom,* 660 F.2d 573, 575–84 (5th Cir.1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982); *Spinkellink v. Wainwright,* 578 F.2d 582, 583–96 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979), and need not dwell on it further.

## IV. PENALTY PHASE OF THE TRIAL.

A brief review of the evidence adduced at Willie's second penalty hearing will serve to place his contentions in context.

At the hearing, the prosecution played to the jury Willie's tape recorded admission that he and Vaccaro had abducted Hathaway, and that Vaccaro had stabbed her in the throat. Testimonial and documentary evidence established that Hathaway was found dead lying on her back with her legs spread far apart and with her arms extended over her head. The doctor who performed the autopsy on the victim testified that Hathaway must have been held in this position until she died or lost consciousness. The doctor also testified that she had been raped and that she had suffered extensive wounds in her neck and throat.

Willie took the stand and testified that when Vaccaro stabbed Hathaway, Hathaway's back was to Vaccaro, with her head in his lap. Willie claimed that he was straddled across her legs and only held her hands when Vaccaro stabbed her. On cross-examination, however, the prosecutor suggested that it had to have been Vaccaro who was holding Hathaway's hands while she was being stabbed by Willie, since the doctor's testimony established that the victim's arms must have been held over her head until she lost consciousness, and, according to Willie's own testimony, Vaccaro was the only one who was in a position to do that.

Willie also told the jury that he had been convicted of escaping from prison and burglary. He testified that he was presently serving three consecutive life sentences for kidnaping and conspiracy to kidnap. He explained that he had used drugs from the age of fifteen, and that on the night of Hathaway's murder he was heavily under the influence of drugs and alcohol. The prosecutor suggested, however, that despite the alleged impairment of Willie's senses that night and the following morning, the statement that Willie gave to Varnado and Sharp in Arkansas was extremely detailed as to the events that had transpired on May 28, 1980.

Willie's aunt also testified at the penalty hearing, and described Willie's difficult childhood, including the fact that he had been shuttled among relatives and that his father had been imprisoned when Willie was a child. She also testified that Willie had used drugs since the age of fifteen.

Following arguments by counsel and instructions by the court, the jury retired to deliberate. The jury found two aggravating circumstances: (1) That the defendant was engaged in the perpetration or attempted perpetration of aggravated rape; and (2) that the offense was committed in an especially heinous, atrocious, or cruel manner. *See* La.Code Crim.Proc. art. 905.4 (West Supp.1983). The jury recommended the death penalty.

### A. *Change of Venue.*

Willie contends that his sixth amendment right to an "impartial jury" at his resen-

---

**18.** Willie's petition alleges:

During the selection of the jury at Petitioner's trial in October 1980, several prospective jurors were excused by the Court because of their conscientious or religious scruples against the death penalty. The exclusion of these jurors caused Petitioner's trial jury to be unrepresentative and biased in favor of the prosecution on the issue of Petitioner's guilt or innocence of the crime with which he was charged, in violation of his rights guaranteed by the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

tencing trial was violated because the trial court failed to change the venue.[19] He asserts that the pretrial publicity resulting between his first and second trials was so pervasive that it was impossible for him to receive a fair trial.

██ As a general rule, a state defendant who seeks habeas relief as a result of pretrial publicity must demonstrate an actual, identifiable prejudice on the part of members of the jury that is attributable to that publicity. *Irvin v. Dowd*, 366 U.S. at 723, 81 S.Ct. at 1642; *Mayola v. Alabama*, 623 F.2d 992, 996 (5th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1986, 68 L.Ed.2d 303 (1981). Willie does not contend that members of the jury were actually prejudiced against him as a consequence of the publicity preceding his resentencing trial; rather, he seeks to invoke the rule of presumed prejudice established in *Rideau v. Louisiana, supra.* As we have discussed, in *Rideau* the Supreme Court overturned the conviction of a habeas petitioner whose confession had been broadcast three times by a local television station to large audiences in the Louisiana parish from which the jury was drawn and in which he was tried less than two months later. In setting aside the state defendant's conviction, the Court did so "without pausing to examine a particularized transcript of the voir dire examination of members of the jury." 373 U.S. at 727, 83 S.Ct. at 1419. Thus, in *Mayola v. Alabama, supra*, we noted that, under *Rideau*, "where a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community, '[jury] prejudice is presumed and there is no further duty to establish bias.'"

623 F.2d at 997 (quoting *United States v. Capo*, 595 F.2d 1086, 1090 (5th Cir.1979), *cert. denied sub nom. Lukefahr v. United States*, 444 U.S. 1012, 100 S.Ct. 660, 62 L.Ed.2d 641 (1980)). *See also Murphy v. Florida*, 421 U.S. at 798–99, 95 S.Ct. at 2035; *Coleman v. Zant*, 708 F.2d 541, 544 (11th Cir.1983); *Calley v. Callaway*, 519 F.2d 184, 204 (5th Cir.1975) (en banc), *cert. denied sub nom. Calley v. Hoffman*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976); *Pamplin v. Mason*, 364 F.2d 1, 4–5 (5th Cir.1966).

Willie alleges that the pretrial publicity before his second penalty hearing was so inflammatory that the jury could be presumed to be prejudiced because the parish's leading newspapers carried front-page stories that disclosed, *inter alia*, the following facts that were not introduced in evidence at Willie's resentencing trial: (1) his prior death sentence; (2) Vaccaro's counsel's statement that Willie had stabbed Hathaway; (3) that a federal prisoner testified at Willie's initial penalty hearing that Willie had confessed to killing Hathaway; (4) that Willie had confessed to committing unrelated crimes of rape, kidnaping, and attempted murder, and that he had been sentenced to life imprisonment; (5) that Willie's mother had disclosed that Willie had threatened her life; and (6) that the Louisiana Supreme Court had vacated Willie's first death sentence because the prosecutor had improperly argued that Willie might some day be pardoned or paroled if given a life sentence.

██ Based on the evidence adduced at the evidentiary hearing held before the district court, we do not find that the pretrial publicity that resulted before Willie's resentencing trial was so inherently prejudi-

---

**19.** Willie's petition alleges:

The failure to change the venue of Petitioner's ... second sentencing proceeding ... violated Petitioner's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Willie's counsel moved for a change of venue for Willie's first trial, but this motion was denied by the trial court and affirmed on appeal. *State v. Willie*, 410 So.2d at 1023–24. Although

at the second sentencing trial Willie's counsel secured a ruling from the trial court that all motions made at the first trial were considered to be preserved, he alleged no facts, nor did he introduce any new evidence regarding pretrial publicity that had elapsed between the two proceedings necessitating a change of venue. Our determination of Willie's claim is based on exhibits introduced at the district court's evidentiary hearing.

cial or inflammatory that the jury could be presumed to be biased. More than two years elapsed between the time of the murder and Willie's conviction, when the crime was given the most attention and when the parish's citizens were most likely to have heard about the incident, and Willie's second penalty hearing. *See, e.g., Patton v. Yount,* —— U.S. ——, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (passage of time between first and second trial can be highly relevant fact); *United States v. Capo,* 595 F.2d at 1090 (trial began almost a year after the murder). Of the sixteen newspaper articles that Willie introduced at the evidentiary hearing before the federal district court, ten appeared between October and December 1980, more than a year and a half before Willie's resentencing trial. *See Murphy v. Florida,* 421 U.S. at 802, 95 S.Ct. at 2037 (no presumption of unfair prejudice where news articles concerning defendant had appeared more than seven months before trial). Moreover, as the district court found, the news stories were primarily factual in nature. *Id.; see also Calley v. Callaway,* 519 F.2d at 206 ("A prejudicial publicity claim must be viewed differently when the news accounts complained of are 'straight news stories rather than invidious articles which would tend to arouse ill will and vindictiveness.'") (quoting *Beck v. Washington,* 369 U.S. 541, 556, 82 S.Ct. 955, 963, 8 L.Ed.2d 98 (1962)); *Hale v. United States,* 435 F.2d 737, 748 (5th Cir.1970) ("no editorials or cartoons denounced appellant"), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971).

While we readily concede that this gruesome case and its participants achieved a significant degree of notoriety in Washington Parish, we note that "the Supreme Court has held that the constitutional standard of fairness requires only that the accused 'have a panel of impartial, "indifferent" jurors,' who base their decision solely on the evidence produced in court; it does not require jurors to be wholly ignorant of

the case." *Mayola v. Alabama, supra,* at 998 (quoting *Murphy v. Florida,* 421 U.S. at 799–800, 95 S.Ct. at 2036).

In *Mayola v. Alabama,* we noted that because "virtually every case of any consequence will be the subject of some press attention … the *Rideau* principle of presumptive prejudice is only 'rarely' applicable." 623 F.2d at 997 (citing *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)). We also observed that only in *Rideau* has the Supreme Court reversed a state court conviction on the basis of presumed prejudice deriving solely from pretrial publicity. 623 F.2d at 997. Moreover, in *Calley v. Callaway, supra,* we recognized that "[w]e cannot expect jurors to live in isolation from the events and news of concern to the community in which they live." *Id.* at 205. Willie does not contend that the jury could be presumed prejudiced simply because it had been reported that he had been convicted of the brutal murder of Faith Hathaway; the jury was apprised of this fact at the opening of the second penalty trial. Although the prejudicial information that Willie has cited was publicized in Washington Parish, we do not find that these disclosures were so inherently prejudicial that a jury formed from the parish's inhabitants could be presumed to be biased. The prejudicial impact of these statements was diminished because they were reported in a straightforward manner and, in most instances, appeared more than a year before the resentencing proceeding. Thus, because this was not a situation where "'the trial atmosphere … [was] utterly corrupted by press coverage,'" *Dobbert v. Florida,* 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977) (quoting *Murphy v. Florida,* 421 U.S. at 798, 95 S.Ct. at 2035), or where "the press saturated the community with sensationalized accounts of the crime," *United States v. Capo,* 595 F.2d at 1090, we cannot grant Willie relief on this ground.[20]

---

**20.** Willie also contends that the district court abused its discretion in failing to conduct a sequestered voir dire at the second penalty hear-

ing. In Willie's habeas petition presented to the district court below, Willie asserted only that the trial court erred in failing to conduct a

*B.* The Witherspoon Issue.

██ Willie also attacks the validity of his death sentence on the ground that one of the veniremen at his resentencing trial was improperly excluded for cause in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[21] In *Witherspoon,* the Supreme Court set aside a defendant's death sentence where members of the venire had been excluded solely because they had conscientious scruples against capital punishment. The Court held that a potential juror could not be excused for cause on the basis of his or her opposition to the death penalty unless he or she was "irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." *Id.* at 522 n. 21, 88 S.Ct. at 1777 n. 21. *Witherspoon* makes clear that prospective jurors at Willie's resentencing proceeding could be excluded only if they made it unmistakably clear that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them. *Id.; Granviel v. Estelle,* 655 F.2d 673, 677 (5th Cir.1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982).[22]

Willie contends that venireman Robert Magee's answers to questions posed at the voir dire showed that he was uncertain whether he would automatically vote against the death penalty. In the face of such ambiguity, Willie argues that the trial court should not have excluded Magee for

cause. During the voir dire, the trial judge asked Magee:

> THE COURT: Mr. Magee, did you say you did not believe in the death penalty?
>
> JUROR MAGEE: Yes, sir.
>
> THE COURT: Are you telling us you would therefore automatically vote for life imprisonment?
>
> JUROR MAGEE: Yes, sir.
>
> THE COURT: You wouldn't consider the death penalty, in other words, you have two options, and you are telling us you would not under any circumstances consider one option, and that would be the death penalty?
>
> JUROR MAGEE: Yes, sir.
>
> THE COURT: No matter what the facts and circumstances of the case may be?
>
> JUROR MAGEE: No, sir, I am kind of both sided. I don't know.
>
> THE COURT: Well, are you saying in this or any case that you would automatically vote against the death penalty?
>
> JUROR MAGEE: At this time.

II Willie Trial Transcript Vol. 2 at 46–47.

Shortly thereafter, Willie's counsel asked Magee:

> COUNSEL: Now if the judge tells you what you have to find before you can bring back the death penalty, what the aggravating circumstances, what the mitigating circumstances are, could you follow the instructions the judge gives you and consider the death penalty[?]

---

sequestered voir dire at his first trial. Because Willie failed to present this claim to the district court, we will not consider it on appeal. *Bufalino v. Reno,* 613 F.2d 568, 569 n. 1 (5th Cir.1980); *Blankenship v. Estelle,* 592 F.2d 270, 271 (5th Cir.), *cert. denied,* 444 U.S. 856, 100 S.Ct. 115, 62 L.Ed.2d 75 (1979).

**21.** Willie's petition alleges:

Potential jurors were struck for cause at Petitioner's second sentencing proceeding because of their views about capital punishment. Some of these excusals for cause violated Petitioner's rights under the Sixth,

Eighth and Fourteenth Amendments to the United States Constitution.

Willie only appeals the excusing of one juror on this ground.

**22.** As we noted in *O'Bryan v. Estelle,* 714 F.2d 365 (5th Cir.1983), *cert. denied sub nom. O'Bryan v. McKaskle,* — U.S. —, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), "The Supreme Court reasoned that a jury from which all persons who had reservations against imposing the death penalty had been excluded was a jury 'uncommonly willing to condemn a man to die.'" *Id.* at 371 (quoting *Witherspoon v. Illinois,* 391 U.S. at 521, 88 S.Ct. at 1776).

JUROR MAGEE: I suppose not. I am undecided.

*Id.* at 50–51.

The court then asked Magee and another prospective juror:

THE COURT: Well, you have to examine your conscience now and tell us whether under any circumstances you would be able to consider bringing back the death penalty or whether you would automatically exclude or eliminate the death penalty as a possible verdict in this case.

JUROR POWELL: I could not bring it back.

THE COURT: Okay, and is that the same with you, Mr. Robert Magee?

JUROR MAGEE: Yes, sir.

*Id.* at 54.

Although it is apparent that Magee expressed some uncertainty as to whether he would automatically vote against the death penalty, we believe that at the

conclusion of the court's voir dire, he unambiguously asserted that he could not vote for the death penalty under any circumstances. Our past decisions have made it clear that even though a venireman may equivocate initially, "exclusion comports with our interpretation of *Witherspoon* if the juror ultimately concludes that he or she opposes the death penalty irrevocably." *Sonnier v. Maggio,* 720 F.2d at 405 (citing *Williams v. Maggio,* 679 F.2d 381, 385–89 (5th Cir.1982) (en banc), *cert. denied,* — U.S. —, 103 S.Ct. 3553, 77 L.Ed.2d 1339 (1983)).[23] Thus, we conclude that the trial court properly excluded Magee under *Witherspoon v. Illinois, supra.*[24]

### C. Prosecutorial Argument.

Willie next asserts that the prosecutor's closing argument was so inflammatory and prejudicial that his second sentencing trial was fundamentally unfair.[25] Specifically,

**23.** Willie's brief alleges:

[T]he trial judge unconstitutionally excused for cause ... venireman, Robert J. Magee. Mr. Magee's answers reflect extreme indecisiveness—*not* the unambiguous inability to impose the death sentence which is required for a proper *Witherspoon* excusal.... [W]hen the judge suddenly returned to Mr. Magee and asked "Okay, and is that the same with you, Mr. Robert Magee?", ... Mr. Magee replied "Yes, sir," [and] the court excused him for cause.

Under the circumstances, the ultimate question posed to the vacillating venireman, Mr. Magee, *viz,* "is that the same with you," was an insufficient basis for his exclusion.

Brief for Petitioner-Appellant at 54–55 (emphasis in original).

We have expressly rejected the proposition that "exclusion of a venireman is impermissible unless he states in response to *all* questions that he absolutely refuses to consider the death penalty." *Williams v. Maggio,* 679 F.2d at 386 (emphasis in original). Our reading of the transcript leaves us with the firm belief that the trial judge carefully examined Magee in an effort to ascertain whether Magee would automatically vote against the death penalty, and Magee's final answer to the court's voir dire made it clear that he would not vote for the death penalty.

If Willie's counsel wished to rehabilitate Magee by demonstrating that he could obey the law regardless of his opposition to the death penalty, it was incumbent upon the defense to establish on the record Magee's willingness to do so

after Magee had unequivocally stated that he could not vote for the death penalty regardless of the evidence presented at the sentencing hearing. *O'Bryan v. Estelle,* 714 F.2d at 376–77. Willie's counsel failed to do this. Moreover, we note that Willie's counsel challenged two other jurors on *Witherspoon* grounds who were excused with Magee, but did not object to the court's excusal of Magee.

**24.** In *O'Bryan v. Estelle, supra,* we noted that the courts have not specifically established a standard for appellate or collateral review of *Witherspoon* challenges. 714 F.2d at 373. We discussed the different standards that have been employed, *id.* at 371–73, but declined to decide which one was appropriate because, even under the more exacting standard of de novo review, the trial judge's exclusion of the three jurors in that case was proper under *Witherspoon. Id.* See also *Sonnier v. Maggio,* 720 F.2d at 405 n. 3. Here too we find it unnecessary to decide what standard of review is appropriate for *Witherspoon* challenges, since we hold that, even under a de novo standard of review, Magee was properly excused for cause.

**25.** Willie's petition alleges:

Conduct by the prosecutor during his rebuttal argument in Petitioner's second sentencing proceeding was so egregious that it rendered that proceeding fundamentally unfair, in violation of Petitioner's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

he notes that the prosecutor argued to the jury:

> Now let me ask you this, and this is the law. Suppose that through an act of God that one of you at the moment that Robert Willie is between her legs and that Joe Vaccaro is holding her hands, that one of us walked up on that scene, nude girl, blind-folded, probably screaming, scared to death, and God willed it that we had a gun, I think almost everyone of us without hesitation would have blown them both away and that we'd have grabbed that little girl and if we had a blanket we'd have wrapped her, and we would have hugged her, and we would have been proud of ourself that we saved her life, and we wouldn't have had one bit of remorse that we used the gun and we'd have been right under the law. The law says that we would have been right to do exactly what we did. Well, if we have that right and the law says that we have that right, as it does, then we also have the right to impose the ultimate penalty on Robert Willie.

II Willie Trial Transcript at 188–89. Willie also contends that the prejudicial effect of this statement was magnified since his counsel did not object to it, thus depriving Willie of a curative instruction from the court.

▉ Unquestionably, the prosecutor's argument was improper because it suggested to the jury that it could impose the death penalty if it would have been justified in using lethal force in defense of the victim.[26] This argument misstates the law regarding Louisiana's scheme of capital punishment, which does not allow the jury to impose the death penalty simply because lethal force could have been used in defense of the victim. *See* La.Code Crim.

Proc. art. 905 *et seq.* (West Supp.1983).[27] The question is, however, whether this remark was so prejudicial that it requires Willie's conviction to be overturned.

Our review of the propriety of prosecutorial comments made during a state trial is "the narrow one of due process and not the broad exercise of supervisory power that [we] would possess in regard to [our] own trial court." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Generally, "we may overturn a state court conviction only if the complained-of conduct has made the trial fundamentally unfair." *O'Bryan v. Estelle,* 714 F.2d 365, 387 (citing *Donnelly v. DeChristoforo, supra,* at 645, 94 S.Ct. at 1872), *cert. denied sub nom. O'Bryan v. McKaskle,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *see also Passman v. Blackburn,* 652 F.2d 559, 567 (5th Cir. 1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982); *Cobb v. Wainwright,* 609 F.2d 754, 756 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980).

Generally, in habeas corpus cases we have held that in order for a defendant to establish that the prosecutor's remarks rendered his or her trial fundamentally unfair, he or she "must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Fulford v. Maggio,* 692 F.2d 354, 359 (5th Cir.1982), *rev'd on other grounds,* 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983). *See also Bronstein v. Wainwright,* 646 F.2d 1048, 1056 (5th Cir.1981) (weak case against defendant will cause prosecutor's improper comments to assume greater significance); *Higgins v. Wainwright,* 424 F.2d 177, 178

---

**26.** La.Rev.Stat.Ann. § 14:22 (West 1974) provides that:

It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person.

**27.** The use of lethal force against the assaulter after the fact of the victim's death is not justified under Louisiana law. Moreover, under the argument that the prosecutor made to the jury, the death penalty could automatically be imposed in every homicide case because lethal force would always be justified in saving the victim's life.

(5th Cir.) ("statement complained of did not rise to the level of a denial of due process when considered in light of the evidence against appellant"), *cert. denied,* 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970).

Louisiana employs a bifurcated trial procedure that confers upon the jury the responsibility of imposing the death penalty. The jury considers relevant statutory aggravating [28] and mitigating. circumstances.[29] At least one statutory aggravating circumstance must be found in order to recommend that the death penalty be imposed.[30] If the jury fails to agree on a recommendation or unanimously finds the sentence of death inappropriate, the trial court, which is required to follow the recommendation of the jury, imposes a sentence of life imprisonment without benefit of probation, parole, or suspension of sentence.[31] *See State v. Sonnier,* 402 So.2d 650, 657 (La.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).

 We do not believe that the prosecutor's erroneous discussion of the use of justifiable force was so prejudicial that Willie was deprived of due process. We reach this conclusion because, based on our review of the arguments and evidence presented as a whole, we do not think that the jury's sentencing recommendation was influenced by the prosecutor's improper comments. Although the jury could have imposed the death penalty in the presence of only a single aggravating circumstance, in this case the jury found two: (1) that the defendant was engaged in the perpetration or attempted perpetration of aggravated rape, and (2) that the offense was committed in an especially heinous, atrocious or cruel manner. There was little mitigating evidence.[32] Moreover, we note that immediately following the prosecutor's improper argument, the trial court correctly instructed the jury as to the requirements of Louisiana law for assessing the death penalty, which helped to compensate for the lack of any contemporaneous curative instruction. *See Bronstein v. Wainwright,* 646 F.2d at 1056. *See also State v. Monroe,* 397 So.2d 1258, 1271 (La.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983).[33]

---

28. *See* La.Code Crim.Proc. art. 905.4.

29. *See* La.Code Crim.Proc. art. 905.5.

30. *See* La.Code Crim.Proc. art. 905.3.

31. *See* La.Code Crim.Proc. art. 905.6.

32. We note that in deciding that the prosecutor's argument did not require the defendant's sentence to be vacated in *State v. Berry,* 391 So.2d 406, 415 (La.1980), *cert. denied,* 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981), the Louisiana Supreme Court noted that the jury had found three aggravating circumstances, and that all three findings were adequately supported by the evidence. Thus, the court held that "[i]n the overall context of this case, considering all the evidence [of the three aggravating circumstances], the minimal mitigating factors and the full arguments of both the state and the defense, we are not convinced that the jury was influenced by the remarks." *Id.*

33. During closing argument, the prosecutor also argued to the jury that "[i]f you're going to hold anything holy about the life of Faith Hathaway, if you're going to say that it has any value at all, you've got to say the death penalty, because otherwise you're saying Robert Willie, your life means more than Faith Hathaway.... The evidence certainly doesn't indicate that his life is even close to the value of that of Faith Hathaway, but even putting a value on it, the two lives. He took her life. He deserves it." II Willie Trial Transcript Vol. 2 at 192–93. Willie asserts that this argument was so prejudicial that his conviction should be set aside. As supporting authority, he cites *Moore v. Zant,* 722 F.2d 640 (11th Cir.1983), *rehearing en banc granted,* 722 F.2d 640, 653 (11th Cir.1984). As an initial matter, we note that *Moore* has been vacated pending rehearing *en banc* by the Eleventh Circuit. Moreover, we do not think that the prosecutorial conduct proscribed by the *Moore* panel was present in this case. The *Moore* panel held that "the prosecution cannot make ... an identifiable characteristic of either the defendant or the victim an issue per se and justification for the death sentence." 722 F.2d at 646. In this case, because the prosecutor's argument was largely an appeal to society's moral outrage, rather than a focus on the particular qualities of the defendant or the victim, we do not believe that there was constitutional error.

Finally, Willie argues that the prosecutor improperly argued to the jury that his office does not "ask for the death penalty lightly." However, this contention was not raised in the district court below and thus will not be considered on appeal. *See supra* note 20.

### D. Ineffective Assistance of Counsel.

Willie also seeks to have us set aside his sentence because he was assertedly denied effective assistance of counsel during the second penalty phase of the trial.[34] Willie alleges that his counsel was ineffective because (1) he failed to move for a change of venue or take other protective measures to shield the jury from the pretrial publicity that occurred prior to Willie's resentencing; (2) he failed to object to prejudicial remarks made by the prosecutor during closing argument; and (3) he failed to produce evidence of certain mitigating factors that might have influenced the jury into recommending life imprisonment. Willie also asserts that one of his attorneys had a conflict of interest, and thus that his sentence has to be aside under *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

In *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court enunciated the standards to be applied when reviewing a claim of ineffective assistance of counsel. There, the Court held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a de-

fendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 2064.[35]

In determining whether a defendant has met his burden of showing that counsel was ineffective, we need not address both components of the *Strickland v. Washington* test if the defendant makes an insufficient showing on one. *Id.* at 2069. The Court instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 2070. Because we do not believe that Willie suffered sufficient prejudice to warrant setting aside his conviction, that is the course we shall indeed take.[36]

An error by counsel, even if professionally unreasonable, does not require setting aside a defendant's conviction if the error had no effect on the judgment. Thus, it is insufficient for the defendant to show that counsel's errors had some possible effect on the verdict. "The defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. The Court held that when a defendant challenges a death sentence "the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence— would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 2069.

---

**34.** Willie's petition alleges:

> Petitioner's trial and appellate counsel failed to render effective assistance of counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, during ... the second sentencing proceeding, and on direct appeal.

Willie's conflict of interest allegation, *infra,* was not raised in his habeas petition. However, Willie testified in the district court on that subject and both sides argued the issue to the dis-

trict court and this court. The state conceded exhaustion at oral argument.

**35.** The Court noted that the principles governing ineffectiveness claims should apply in federal collateral proceedings. 104 S.Ct. at 2070.

**36.** In finding that Willie has made an insufficient showing of prejudice, we, of course, intimate no view as to whether Willie demonstrated that counsel's assistance was deficient.

At Willie's second penalty hearing, Willie's counsel renewed all motions made at the first trial, which included a motion for a change of venue. However, counsel failed to present the trial court with any evidence of pretrial publicity preceding the second trial that would support the change of venue motion, and Willie argues that had counsel done so, the motion would have been granted.

We disagree. Although Willie's counsel moved for a change of venue for Willie's first trial, it was denied and affirmed on appeal. *State v. Willie*, 410 So.2d at 1023–24. In affirming the trial court, the Louisiana Supreme Court noted that "the great bulk of publicity consisted of straight news reporting, which occurred nearly two months before trial." *Id.* at 1024. The court also found that although the crime was "vile and outrageous," and had been "thoroughly covered by the news media," it was not attended by other exacerbating factors such as racial strife; in fact, the court noted that Willie and the victim were of the same race, and that neither was a resident of the parish in which the crime occurred and the trial was held. *Id.* The court also found that while almost all of the fifty-two prospective jurors had read or heard about the case, only ten said that they had formed any opinion as to Willie's guilt and, of those ten, six said they were unable to set aside that opinion and render a verdict based on the evidence presented at trial. *Id.*

■ Had Willie's counsel presented the trial court with the evidence of pretrial publicity that was introduced in the district court, we do not believe that there is a reasonable probability that the trial court would have been any more disposed to grant a change of venue. Most of the pretrial publicity occurred not two months but over a year before the second trial. It remained noninflammatory and primarily factual in nature. At trial, the court asked each juror whether he or she had read or heard anything about the case that would make him or her incapable of being impartial, and only two jurors responded that they would not be able to render a verdict based on the evidence. Therefore, we do not believe that Willie was prejudiced in this instance because, absent the alleged error, we are not convinced that there is a reasonable probability that the trial court would have granted a change of venue.

■ Willie also contends that counsel's voir dire was inadequate because he failed to ask the veniremen whether they had read or heard about the case, whether they had an opinion and, if they did have an opinion, whether they could disregard it and be impartial. However, the trial court asked each member of the jury whether he or she had read any newspaper accounts or heard any discussion of what purported to be the facts of the case that would prevent him or her from rendering a verdict based solely on the evidence presented at trial. Based on the court's inquiries, some jurors were excused for bias. Thus, we believe that there is no reasonable likelihood that counsel would have established actual prejudice on the part of those jurors who were seated.[37]

■ Willie also asserts that his attorney's failure to object either at trial or on direct appeal to the prosecutor's improper argument during the resentencing proceeding constituted ineffective assistance of counsel. However, the lack of such an objection did not have the devastating impact attributed to it by Willie. Under Louisiana law, the Louisiana Supreme Court must review all death sentences to determine whether they were influenced by "passion, prejudice, or other arbitrary factors." La.Sup.Ct.R. 28, La.Code Crim. Proc. art. 905.9 (West Supp.1983). Thus, the lack of an objection did not preclude review of this issue. *See, e.g., State v. Berry*, 391 So.2d 406, 415 (La.1980), *cert. denied*, 451 U.S. 1010, 101 S.Ct. 2347, 68

---

**37.** Willie also claims that his counsel should have moved for a sequestered voir dire at the second penalty hearing. This claim was not presented in Willie's petition before the district court and therefore will not be considered on appeal. *See supra*, note 20.

L.Ed.2d 863 (1981).[38] Moreover, we do not believe that the prosecutor's erroneous argument had any material effect on the jury's recommendation. *See supra* III.C.

Next, Willie argues that, in general, counsel's overall performance at the penalty hearing was deficient. Once again, we find *Washington v. Strickland*'s prejudice prong is dispositive of this argument, because we are not persuaded that there is a reasonable probability that Willie's counsel's performance affected the result of the resentencing proceeding. Willie's principal contention is that his attorney placed too much emphasis on Vaccaro's culpability, ignoring in the process other mitigating evidence that allegedly would have made the difference. Willie contends that his counsel never contacted numerous relatives and friends who were prepared to testify about Willie's troubled childhood. However, both Willie and an aunt who had cared for him as a child discussed Willie's difficult childhood and his drug addiction.

Willie also contends that his counsel failed to produce any evidence of Willie's mental condition. However, the only evidence that Willie introduced in the federal district court regarding his mental state was an affidavit obtained from a psychiatrist who had never examined Willie and whose conclusions were based solely upon representations made to him by Willie's present counsel, and two affidavits, from Willie's aunt and a close friend, who had no medical or psychiatric training, and whose opinions were not premised on specific facts or incidents.

█ We do not believe that the outcome of the jury's deliberations, in light of the state's evidence showing the aggravated circumstances of the crime, would have been altered by other defense witnesses who merely told more about the defendant's troubled adolesence.[39] The evidence presented by the state in support of its request for the death penalty was not only substantial but undoubtedly left a deep impression on the jury. A taped confession given by Willie described how the victim was repeatedly stabbed in the throat. A medical doctor graphically described the victim's wounds, including those suffered in self-defense, and the fact that her necklace and locket were found embedded in her throat. He also described the tear in her vagina that showed she had been raped, and remarked that her death had indeed been a painful one. Willie testified and showed little remorse for his crime. The jury was also apprised of Willie's prior convictions, including those of rape and attempted murder.

In light of the foregoing, we conclude that even if Willie's counsel had offered the mitigating evidence that Willie has discussed in his petition, that there is no reasonable probability that the omitted evidence would have changed the jury's conclusion that, in the face of the overwhelming aggravating circumstances, the death penalty should be invoked. *Strickland v. Washington*, 104 S.Ct. at 2071.

Finally, Willie contends that counsel failed adequately to prepare him to testify at the penalty hearing. Willie asserts that this lack of preparation resulted in Willie's "disastrous" performance before the jury. However, in light of the overwhelming aggravating circumstances that are present in this case, we are not persuaded that there is a reasonable probability that Willie suffered any prejudice as a result of his attorney's alleged failure to prepare him to testify.

█ Willie's conflict of interest allegation requires a somewhat different analy-

38. We note that the Louisiana Supreme Court vacated Willie's initial death sentence after a *sua sponte* determination that the prosecutor's closing argument at the first sentencing proceeding was improper. Willie's counsel had made no contemporaneous objection to that argument, nor had he raised it on direct appeal.

39. The district court concluded that Willie's counsel's decision not to adduce more evidence as to Willie's childhood or drug use could have been a tactical decision and could not be faulted in hindsight. Record on Appeal Vol. 3 at 121. As noted above, our disposition of these matters rests on insufficient prejudice, not the allegedly inadequate performance of counsel.

sis. In *Cuyler v. Sullivan, supra,* the Court held that prejudice is presumed when counsel is burdened by a conflict of interest. 446 U.S. at 345–50, 100 S.Ct. at 1716–19. *See also Strickland v. Washington,* 104 S.Ct. at 2067. But prejudice is presumed "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict adversely affected his lawyer's performance.'" *Strickland v. Washington,* 104 S.Ct. at 2067 (quoting *Cuyler v. Sullivan,* 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718). We do not need to deal with the question whether one of Willie's lawyers at the second sentencing hearing (who represented Vaccaro at his trial) actively represented conflicting interests because we conclude that Willie has adduced no evidence that the alleged conflict affected his attorney's performance either before or during his resentencing proceeding.

### E. Louisiana's Discriminatory Application of the Death Penalty.

██ Finally, Willie's petition alleges that the death penalty in Louisiana is discriminatorily imposed against males and poor persons, of which classes Willie asserts himself a member, and because the death penalty is imposed in such an arbitrary and capricious manner, carrying out his sentence would be unconstitutional. However, Willie did not adduce any evidence to support such an allegation in the district court, but instead made a motion for discovery and asked the court for funds to develop such evidence. He also moved for a continuance. The district court denied all of these requests.

Under 28 fol. U.S.C. § 2254 (1982), Rule 6, the district court, in its discretion, may grant discovery if good cause is shown. Since Willie made only conclusory allegations regarding this claim, we do not believe the district court abused its discretion in denying discovery. Moreover, Willie has cited no authority standing for the proposition that a habeas petitioner is entitled to funds to develop such evidence on the basis of mere conclusory allegations. Finally,

we hold that the district court did not abuse its discretion in refusing to grant a continuance. *Hicks v. Wainwright,* 633 F.2d 1146, 1148 (5th Cir.1981); *Peters v. Kiff,* 491 F.2d 967, 968 (5th Cir.1974).

## V. CONCLUSION.

We have examined each of Willie's claims and conclude that he is not entitled to habeas relief. Thus, the judgment of the district court is AFFIRMED, and the stay of execution is VACATED.